IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| SAMUEL LEE GRIER | ) Civil Action No. 4:05-0426-TLW-TER |
| Plaintiff, | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| JIMMY CAPPS, JR., OFFICER FOR GEORGETOWN COUNTY SHERIFF'S DEPARTMENT; AND A. LANE CRIBB, SHERIFF OF THE GEORGETOWN COUNTY SHERIFF'S DEPARTMENT, | ) |
| Defendants. | ) |

## I.  PROCEDURAL BACKGROUND

The plaintiff, Samuel Grier, filed this action under 42 U.S.C. § 1983[1] on February 15, 2005, alleging that his civil rights were violated when he was arrested on March 1, 2004. On October 12, 2005, defendants filed a motion to dismiss or in the alternative for summary judgment along with supporting memorandum. (Doc. #25). Plaintiff filed a response in opposition on January 17, 2005. (Doc. #29). In reviewing defendants' memorandum, it was noted that defendants referenced exhibits in their argument. However, there were no exhibits attached. Therefore, it could not be determined if plaintiff was served with a copy of any exhibits or affidavits to allow him to properly respond to the motion. Thus, it was recommended that the motion to dismiss or in the alternative for summary judgment be denied at that time. The District Judge adopted the report and recommendation and gave the defendants thirty (30) days to re-file their motion for summary judgment along with attached affidavits and exhibits and to serve plaintiff with a complete copy of their motion and memorandum.

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

(Doc. #36).

On August 4, 2006, defendants filed a motion to dismiss or in the alternative, for summary judgment along with a memorandum and affidavit in support. (Doc.#40). Because the plaintiff is proceeding pro se, he was advised on or about August 7, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th. Cir. 1975), that a failure to respond to the defendants' motion for summary judgment with additional evidence or counter affidavits could result in dismissal of his complaint. Plaintiff filed a response in opposition on September 18, 2006 (doc. #42), and defendants filed a reply on September 25, 2006, with attached affidavit and medical records. (Doc. #43). On October 20, 2006, plaintiff filed a reply to defendants' reply.

## II.  DISCUSSION OF ALLEGATIONS

Plaintiff alleges he was stopped by Defendant Capps ("Capps") of the Georgetown County Sheriff's Department on March 1, 2004. Plaintiff alleges that Capps stopped him because he recognized plaintiff when he passed by him in the car from a prior incident. However, Capps attests that he stopped plaintiff for driving at a high rate of speed with his hazard lights on. Plaintiff alleges that he was found not guilty of speeding. Officer Capps attests that he had had dealings with the plaintiff in the past where he was driving under suspension and plaintiff had run from him.

Upon stopping, plaintiff got out and came to Officer Capps vehicle. Defendant Capps followed plaintiff back to his van and noticed what he believed to be drug paraphernalia. In his response, plaintiff asserts that Capps previously claimed he saw a small straw but that the straw was never tested for drugs. Upon searching the car, Capps found a pill bottle in the vehicle and other items which supposedly raised his suspicions about plaintiff's involvement in illegal drug activity.

2

Capps then asked plaintiff to have a seat inside the back seat of his patrol car while the search of plaintiff's car continued. After completing the search, Capps returned to his patrol car and rolled down the rear window to speak to plaintiff. Once Capps informed plaintiff that he was under arrest, plaintiff proceeded to try and flee. Plaintiff opened the door in an attempt to exit the vehicle. Capps has admitted that he used his baton and mace to try and restrain plaintiff when he refused to stay in the patrol car. However, plaintiff forced his way out of the patrol car and the two began to struggle. Officer Capps fired shots and plaintiff's vehicle to try and stop it. Plaintiff re-entered his vehicle and attempted to flee the scene even though defendant Capps demanded that he remain. In his response, plaintiff alleges that he fled to avoid further assault by Capps. Capps then fired several rounds from his service weapon into the grill and front driver's side tire of plaintiff's vehicle. Capps returned to his patrol car and pursued plaintiff with his lights flashing. Defendant Capps was able to use his patrol car to stop plaintiff's car. (Defendants assert that plaintiff lost control of his vehicle on his own). When plaintiff attempted to exit his vehicle, Defendant Capps pulled his patrol car forward pinning plaintiff between the door of his car and the patrol car. After back up police officers and EMS personnel arrived, plaintiff was formally arrested and taken into custody. Plaintiff was treated and released from Georgetown Memorial Hospital, then transported to the Georgetown County Detention Center.

### III. SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues

of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner has failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

### IV.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

As previously stated, defendants filed a motion to dismiss or, in the alternative,  for summary

judgment. Since evidence outside of the pleadings has been presented in support of their motion, it will be treated as a motion for summary judgment.

In their motion, defendants assert that under the circumstances as presented, plaintiff cannot meet the standard that Officer Capps applied force in an unreasonable manner. Defendants argue that as a result of plaintiff's actions on March 1, 2004, he was charged and convicted of Assault of a High and Aggravated Nature, Assault While Resisting Arrest, Failure to Stop for a Blue Light and Possession of Heroin. Defendants contend that even considering the facts in a light most favorable to the plaintiff, it is clear that he resisted arrest, fought with Officer Capps and created the need for reasonable force to be used by Officer Capps to subdue him. Defendants argue that the use of force was increased only in direct proportion and response to the increasing severity of plaintiff's crimes. Defendants submitted the affidavit of Defendant Capps.

In his affidavit, Capps attests that he is currently employed as a Conservation Officer with the South Carolina Department of Natural Resources and was previously employed with the Georgetown County Sheriff's Department for approximately three (3) years. Capps attests that he was employed with the Georgetown County Sheriff's Department on March 1, 2004, and has reviewed plaintiff's allegations in his complaint. Capps attests that on March 1, 2004, he stopped plaintiff for traveling at a high rate of speed with his hazard lights on and before he could get out of his patrol car, plaintiff got out of his van and began to walk toward the patrol car. Capps states that after a brief discussion about his speed and hazard lights, plaintiff began walking back toward his vehicle. Capps states he followed plaintiff back to his vehicle where he saw suspicious items in plain view in his car which were consistent with paraphernalia used by persons involved in the drug trade. Capps attests that plaintiff was acting nervous and his speech was slurred which gave him reason to

5

believe plaintiff was under the influence of drugs and/or alcohol and in possession of same. Therefore, Capps asserts that he requested permission from plaintiff to search the vehicle and plaintiff agreed. Capps states that he sensed something wrong so he requested plaintiff to sit in the back seat of his patrol car for his and plaintiff's safety. Capps attests that he had dealings with the plaintiff in the past where he was driving under suspension and had run from Capps. Capps states, "I was cautious that he might try and run on this occasion. I ran Plaintiff's driver's license which came back from Central Dispatch as suspended and I attempted to roll Plaintiff's window down. Once I informed him he was under arrest, he attempted to run. I tried to subdue Plaintiff, but he continued to fight and attempted to take my gun which caused me great concern for my life." (Capps' affidavit p. 2). Capps contends that plaintiff got away, got in his van, and refused to get out when Capps instructed him to do so, and attempted to run over Capps. Capps attests that he shot at plaintiff's vehicle to stop the vehicle, not harm Mr. Grier. Capps states that he was concerned for his safety and the safety of others. Capps attests that he followed plaintiff with his lights and siren activated but plaintiff refused to stop. Capps attests that plaintiff was driving erratically and running others off of the road and with his front tire flat, he was driving even more reckless. Capps states that plaintiff then lost control of his vehicle and he pulled his patrol car up against the driver's side of the van to keep plaintiff from running away. (Capps' affidavit).

In his response to the motion for summary judgment, plaintiff argues that he was not speeding at the time Capps stopped him and that previous statements by Capps are inconsistent as to when he recognized plaintiff. Plaintiff also argues that the search was not proper in that one item Capps said raised his suspicion was a straw which plaintiff argues was never tested for drugs. Further, plaintiff argues that Capps struck his vehicle in the rear causing him to loose control and

6

then hit his vehicle in the side door pinning him between the vehicle. Plaintiff argues that "the stop was a pretext for plaintiff has never been charged with possession of drug paraphernalia." (Plaintiff's reply). Plaintiff argues that there are issues of fact as to whether or not there was probable cause to stop him and/or search his vehicle. Plaintiff argues that he was attempting to avoid being further assaulted by Capps and reiterates that he was found not guilty at various judicial levels. Further, plaintiff argues that defendants have not presented any additional evidence/charges for any other damages to person(s) or property and there is no evidence that Capps received any treatment for any physical injury.

In his response, plaintiff argues that the initial stop for speeding was illegal and, thus, all events subsequent to the stop are fruit of the poisonous tree. Taking plaintiff's argument at face value and assuming there was no probable cause for the stop, his attempted use of the "fruit of the poisonous tree doctrine" used as an exclusionary rule in criminal case is not available in a civil case for damages. Bradshaw v. Chicago Police Officer Thomas Mazurski, 2004 WL 170337 (N.D. III. 2004). An independent analysis of the facts and circumstances as to each separate constitutional claims is proper. Padilla v. Miller, 143 F.Supp.2d 453 (M.D. Penn., 1999)(The fruit of the poisonous tree doctrine is an evidentiary exclusionary rule intended to deter unlawful conduct, but is not a substitute for determining whether a constitutional violation has occurred in a civil rights action: each stage of cumulatively, with dispositive question being whether state of defendant's knowledge is adequate to support his or her conduct). The defendants arrested plaintiff after the officer discovered plaintiff was driving under suspension and discovered drug paraphernalia was present. Therefore, there is independent intervening facts and circumstances that clearly provide probable

cause in this case.[2]

As the allegations plaintiff has raised in connection with his arrest in his complaint pertain to the time period before he was arrested and before he was a pretrial detainee, his claims are evaluated pursuant to the Fourth Amendment. Protection against force during arrest is provided by the Fourth Amendment, Graham v. Connor, 490 U.S. 386 (1989). All claims of use of excessive force during investigatory stop or arrest or other seizures are governed by the Fourth Amendment's "objective reasonableness" standard. Id. The test for excessive force in arrest context requires "balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests

---

[2] In King v. Harper, 2005 WL 3359098, the court held the following:

> The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Because a traffic stop of a vehicle constitutes a seizure with the meaning of the Fourth Amendment, such stops must also be reasonable under the circumstances. *See* Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). "As a general matter, the decision to stop an automobile is reasonable when the police have probable cause to believe that a traffic violation has occurred," *id*., or "a reasonable suspicion supported by articulate facts that criminal activity may be afoot," United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (internal quotation marks omitted). As long as the officer has a reasonable suspicion that even a minor traffic offense has occurred or is occurring, the stop of the vehicle is constitutionally permissible. *See* United States v. Hassen El, 5 F.3d 726, 730 (4th Cir. 1993).
>
> . . . the Supreme Court in Whren v. United States, 517 U.S. at 810, held that police officers can temporarily detain a motorist when they have probable cause to believe the motorist violated a traffic ordinance, even if the police have some other motivation to stop the motorist.

Id.

against the importance of the governments interests alleged to justify the intrusion." Tennessee v. Garner, 471 U.S. 1, 8 (1985). The standard for measuring reasonableness of arrest is wholly objective. The objective reasonableness test requires careful attention to circumstances of a particular case, including severity of the crime, whether the suspect poses immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Graham, 490 U.S. at 396, Foote v. Dunagan, 33 F.3d 445 (4th Cir. 1994). The focus is on reasonableness at the moment, recognizing that officers are often faced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving. Graham, 490 U.S. at 396.

The court may also consider the extent of plaintiff's injuries, or lack of them, in weighing his claim of excessive force. In a recent case from the prison milieu, the United States Supreme Court indicated that the amount of injury is irrelevant, if the inmate can show that it was inflicted with a malicious intent to harm. Hudson v. McMillian, 112 S. Ct. 995, 117 L.Ed.2d 156 (1992). Although that standard is used in consideration of Eighth Amendment claims of cruel and unusual punishment, the same thought must be applied in cases questioning the "objective reasonableness" of force used to effect an arrest.

In the Fourth Circuit case of Drewitt v. Pratt, 999 F.2d 774 (4th Cir. 1993), the Fourth Circuit Court of Appeals found the officer in that case "acted reasonably as viewed from the officer's perspective of the situation. The officer was forced to make a quick decision when faced with an oncoming car and acted reasonably in shooting at the suspect in order to prevent serious injury to himself or the other officers." Summary judgment was deemed appropriate in the Drewitt case and is likewise appropriate in the plaintiff's case.

It is clear from plaintiff's pleadings and defendants' affidavit that plaintiff was struggling

9

with the Officer Capps. Clearly, the situation was tense. Additionally, plaintiff refused to follow the directives of law enforcement and resisted attempts to arrest him. Plaintiff struggled with Officer Capps and then attempted to flee refusing to directives to stop. When plaintiff lost control of his vehicle and came to a stop, Officer Capps pulled his patrol car against the driver's side of plaintiff's van where plaintiff was attempting to exit to prevent plaintiff from escaping. Plaintiff was then pinned between his van and the patrol car. Officer Capps, in this case, would be allowed to use reasonable force consistent with what is necessary to have taken the plaintiff into custody. The facts as set forth indicate the force applied to take the plaintiff into custody was reasonable. The plaintiff has simply failed to put forth evidence to show there was a malicious intent by law enforcement to harm him while he is being taken into custody. Again, the situation was tense based on the conduct of the plaintiff. Law Enforcement is allowed to use reasonable force to take the plaintiff into custody. Based on the police reports and affidavit, Officer Capps did what he thought was necessary at the time. Plaintiff admits that he was taken to the hospital for treatment from the scene of the incident. No evidence has been submitted that plaintiff suffered any significant, life threatening, or permanent injuries.

In summary, plaintiff's claims of unnecessary and excessive force are simply not supported by the evidence of record. He has failed to show that the actions of Officer Capps was improperly motivated, therefore, he has failed to show that the reasonable degree of force used against him was unconstitutional. There is simply no <u>genuine</u> issue as to the facts in this case. It is, therefore, recommended that summary judgment is appropriate on the issue of excessive force due to the lack of evidence supporting the objective element of this claim.

Even assuming, *arguendo*, there was excessive force used during the arrest, a plaintiff may

not recover, however, for only de minimis injuries. Hudson, 117 L.Ed.2d, at 168.

Next, defendants argue that plaintiff's claims of constitutional deprivation fail as a matter of law where the record clearly demonstrates any alleged injury is *de minimis* and fails to rise to the level of cognizable constitutional claim. Defendants assert that plaintiff was treated and released from Georgetown Memorial Hospital and sent to the Georgetown Detention Center within a short time period.

Defendants submitted the affidavit of Dr. Martin A. Jacobson who attests that he is currently employed by Southeastern Healthcare as the physician at the Georgetown County Detention Center. Dr. Jacobson attests that he reviewed the medical records from Georgetown Memorial Hospital (GMH) provided to him at the time of his treatment of plaintiff. (These medical records are attached to the affidavit). Dr. Jacobson attests that a review of the records reveal that plaintiff was admitted to GMH about 3:00 p.m. and discharged at 7:00 p.m. Dr. Jacobson states that based on the prior medical history given by plaintiff, he had pre-existing left knee problems and admitted to cocaine and heroin use earlier that day. Dr. Jacobson attests that plaintiff was examined and blood tests were taken at the hospital which revealed that he was positive for Opiates and Cocaine. Dr. Jacobson states the records reveal plaintiff did not suffer any fractures and appeared to have full range of motion of all extremities and no gait problems on discharge. Further, Dr. Jacobson attests that plaintiff did not make any significant complaints of pain as a result of his arrest on March 1, 2004, while at the Georgetown County Detention Center but only complained of muscle soreness from time to time which was treated with over-the-counter pain relievers. Dr. Jacobson attests that no hospitalizations were required to treat plaintiff while he was at the Georgetown County Detention Center from March 1, 2004, until he was transferred on or about August 31, 2004. Dr. Jacobson

attests that in his opinion, plaintiff suffered "at best, only minor injuries from his arrest on March 1, 2004. This opinion is based on my review of his medical records from Georgetown Memorial Hospital and Georgetown County Detention Center, as well as my treatment of Mr. Grier during the five (5) months he was at Georgetown County Detention Center." (Affidavit). Dr. Jacobson states that prior to his March 1, 2004, incarceration, plaintiff's medical records from Georgetown County Detention Center support problems with swelling and pain associated with his left leg. (Dr. Jacobson's affidavit). A copy of plaintiff's medical records are attached to Dr. Jacobson's affidavit.

In his reply to defendants' reply, plaintiff argues that defendants have not submitted all of the medical records they subpoenaed. Further, plaintiff argues that Dr. Jacobson was not the treating physician at GMH on the day of said incident so that his affidavit should not be considered on information not based on personal knowledge. Additionally, plaintiff argues that defendants' attempts to imply that he admitted the use of cocaine and heroin on the day of the incident should fail. Plaintiff contends that Dr. Jacobson failed to inform the court that he was not returned for follow up treatment. Plaintiff attached copies of medical records to his reply.

A review of the medical records plaintiff submitted with his reply reveal that the EMS report states that "Pt has white substance below nose and around mouth. Pt has no explanation of what it could be." (Plaintiff's Exhibit 4). The Emergency Room Department Summary from GMH submitted by plaintiff reveals the following:

> The patient is a 53-year-old black male, brought by EMS, seen at 1500 hours. He was accompanied by police as well and handcuffed. Officers state that the patient was resisting arrest. He was sprayed with mace. He then apparently jumped in his car according to police and there was a car chase of 10-12 miles. The patient lost control of the car and tried to jump out of the van. The patrol car then pulled up adjacent and the patient was pinned between his car and a patrol car. His left leg was between the van and the door. The top of the

>door was somewhat across his neck. His right leg was still in the car. Police were concerned that the patient tried to ingest some drugs as they saw some white powder in the car and around his mouth and brought the patient for evaluation. The patient is complaining of some pain in his head and left knee. He denies any loss of consciousness. He denied swallowing any drugs, although he did tell me later without police in room that he had snorted some heroin earlier in today and that he does that daily. He denied any loss of consciousness, change in vision, difficulty swallowing, sore throat, cold symptoms, neckpain, chest pain, shortness of breath, hemoptysis, abdominal pain, melena, rectal bleeding, dysuria, hematuria, frequency, urgency, paresthesias or other complaints.

(Plaintiff's Exhibit 5, GMA Emergency Room summary).

Further, the notes state that patient was then allowed to get up and walked without any kind of limp. It was noted that he only had an abrasion on the right side of his forehead and had full range of motion in both upper and lower extremities. The diagnosis was trauma and contusions and abrasions and it was noted he was "discharged, ambulatory with police with full range of motion in all extremities and normal gait and coordination." (Plaintiff's Exhibit #5).

Even if Dr. Jacobson did not treat plaintiff at GMH, plaintiff himself submitted medical records for the court's review revealing that he had full range of motion in all extremities, normal gait and coordination and which indicated that he stated he had snorted heroin that day.

Viewing the facts in the light most favorable to the plaintiff, his injuries were de minimis. If a prisoner's injury is de minimis, then the prisoner's excessive force claim fails as a matter of law. Norman v. Taylor, 25 F.3d 1259, 1262 (4th Cir. 1994). Plaintiff's injuries do not warrant a finding of a constitutional violation and recovery of damages. Plaintiff was taken to GMH where he was treated and released within a few hours. A review of the Emergency Department Summary reveals that plaintiff had no head, chest, or abdominal trauma, did not strike his head on the dashboard or steering wheel and did not get knocked out. The records reveal plaintiff only complained of "some

musculoskeletal stiffness, but no other complicating factors. No open lacerations or abrasions." It was also noted his past medical history reveals prior knee surgery. The emergency room records also reveal plaintiff had a head Ct scan and x-rays of his chest, left femur, left knee, spine and left elbow which were negative. The x-rays of his left tibia fibula show only old fractures. Plaintiff was diagnosed with musculoskeletal pain with no evidence of open lacerations or abrasions. Based on the reports submitted by the plaintiff, he had full range of motion in all extremities and normal gait and coordination. He was released with a diagnosis of only contusions and abrasion. The medical records (which are difficult to read) from Georgetown County Detention Center reveal that plaintiff was treated from March 1, 2004, until July 10, 2006, for athletes foot, a toothache, his finger which was slammed in a cell door in July of 2004, neck stiffness, and head pain for which he received Motrin. There is no evidence of permanent or serious injury. Therefore, the undersigned recommends that defendants' motion for summary judgment be granted on this ground.

Further, defendants argue that Capps acted reasonably given the circumstances and, therefore, plaintiff's claims are barred by the doctrine of qualified immunity. Defendants argue that nothing in plaintiff's complaint indicates that defendant Capps or Cribb violated any of his clearly established constitutional rights and, to the extent they did, his claims fail because defendant Capps' acted reasonable in his actions.

Although the burden of showing immunity remains on the defendant, an early determination is desirable, since immunity provides complete protection from a lawsuit, including from discovery or other preparation. When a defendant asserts that he or she is completely immune from suit, the court must consider whether the defense meets the standard set forth by various courts which have considered the issue. When a person is sued in his individual capacity, the court may consider

14

whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it. The defendants argue that they are entitled to qualified immunity in their individual capacity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

In this case, the plaintiff has failed to allege any claim against any defendant that would constitute action outside the scope and course of their employment. Defendant Capps stopped the vehicle and observed items in the vehicle in plain view that he felt were consistent with paraphernalia used by persons involved in drug trade. Upon searching the vehicle and finding further items consistent with drug use, Capps ran plaintiff's license with Central Dispatch finding that it had been suspended. Plaintiff attempted to flee and when Capps attempted to subdue plaintiff a fight ensued. Plaintiff escaped and got in his vehicle refusing to stop even with Officer Capps in front of the van ordering him to stop, and did not stop after shots were fired at the vehicle. Officer Capps did not fire directly at plaintiff. When plaintiff's vehicle did stop, Officer Capps did what was necessary with the least amount of force to subdue plaintiff until back up could arrive. Therefore, defendant Capps acted reasonably in trying to protect himself, the plaintiff and others. As stated above, the undersigned finds that Officer Capps did not act with unnecessary or excessive force. Plaintiff has not made any direct allegations against Sheriff Cribb other than he was Capps' employer and should have supervised him better. There has been no evidence presented that Sheriff Cribb was present

during the incident. Accordingly, the undersigned recommends that the defendants' motion for summary judgment be granted on the issue of qualified immunity.

Defendants also argue that plaintiff fails to plead any factual allegations to support any involvement by Sheriff Cribb in this matter other than as employer of Officer Capps. Defendants argue that defendant Cribb should be dismissed due to plaintiff's failure to plead any factual allegations concerning defendant Cribb's involvement.

In his reply, plaintiff argues that he has brought this action against Sheriff A. Lane Cribb because he failed in his capacity as Sheriff to properly supervise Officer Capps. Further, plaintiff asserts that the defendants "have not refuted plaintiff's exhibit's as to what Sheriff Cribb did or did not know." (Plaintiff's response).

Plaintiff has not made any direct allegations against Sheriff Cribb other than the fact that he failed to properly supervise Officer Capps in his capacity as Sheriff. Plaintiff has not shown that there was any deficiency in policy or training on the part of Sheriff Gregg. Based on the above, the undersigned concludes that plaintiff has failed to allege personal involvement by Sheriff Cribb and has not shown any proof of a deficient policy, custom, or training on the part of Sheriff Cribb that would have any relevancy to this action or amount to a constitutional violation. Therefore, it is recommended that the action against Sheriff Cribb be dismissed and defendants' motion for summary judgment granted.

## V.  CONCLUSION

Based on the reasons set out above, it is **RECOMMENDED** that the motion filed by the defendants for summary judgment (document #40) be **GRANTED** in its entirety.

          Respectfully submitted,

          s/Thomas E. Rogers, III
          Thomas E. Rogers, III
          United States Magistrate Judge

January 26, 2007
Florence, South Carolina

  **The parties' attention is directed to the important information on the attached notice.**